USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA         :      S1 05 Cr. 713 (SHS)
                                 :
    -against-                    :      MEMORANDUM OPINION & ORDER
                                 :
YOUSSEF FAKIH,                   :
                   Defendant.    :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Following a five-day jury trial, Youssef Fakih was convicted on April 25, 2006 of witness tampering in violation of 18 U.S.C. § 1512(b). He now moves pursuant to Fed. R. Crim. P. 29 to have that verdict set aside, or in the alternative, pursuant to Fed. R. Crim. P. 33 for a new trial. That motion is denied because the evidence was sufficient to support the jury's verdict and the interests of justice do not require a new trial.

Rule 29(c) of the Federal Rules of Criminal Procedure provides that a court may set aside a jury verdict and enter a judgment of acquittal when "the evidence is insufficient to sustain a conviction." Guilty verdicts cannot be overturned if "after viewing the evidence in the light most favorable to the prosecution . . . [the court concludes that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

Pursuant to Fed. R. Crim. P. 33, a court may vacate a judgment of conviction and grant a new trial "if the interest of justice so requires." See also United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992) (new trial warranted where there is a need to "avert a perceived miscarriage of justice"). In evaluating a motion pursuant to Rule 33, the Court is to "examine the entire case, take into account all facts and circumstances, and make an objective evaluation"

of whether the record supports the jury verdict, United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). In order to grant a Rule 33 motion, "There must be a real concern that an innocent person may have been convicted." Id. at 134 (quoting Sanchez, 969 F.2d at 1414).

Fakih contends that the evidence failed to demonstrate beyond a reasonable doubt that: (1) the information Fakih allegedly attempted to impede related to a federal offense; (2) Fakih knowingly corruptly persuaded the witness at issue, Robert Rothenberg; and (3) Fakih knew that his actions would have the probable effect of interfering with the grand jury investigation. Fakih also contends that there was insufficient evidence of venue in this district and that the charge on venue was erroneous. None of these arguments has merit.

First, there was ample evidence demonstrating that the information Fakih attempted to impede – namely, that Rothenberg knew him as "Habib" – related to a federal offense. Agent Vincent Browning of the Federal Bureau of Investigation testified that in the course of his investigation into credit card fraud allegedly involving Fakih and his cousin Hassan Mazeh, the name "Habib" was used in connection with the fraud. (Tr. 56-57; 75.) (Credit card fraud affecting interstate commerce is a federal offense. See 18 U.S.C. § 1029.) The government also introduced into evidence a credit report that indicated that "approximately $140,000" of debt had been run up under the name "Fadi Habib" that could not be collected. (Tr. 62-65; Gov't Ex. 20.) Fakih's use of the name "Habib," therefore, is plainly related to the offense of credit card fraud.

Second, there was sufficient evidence for the jury to conclude that Fakih knowingly corruptly persuaded or attempted to persuade Rothenberg. The jury could reasonably have found that the recorded conversation between Fakih and Rothenberg demonstrates that Fakih coached Rothenberg about what to say to the FBI agent. For example, Fakih told Rothernberg: "If they come and ask you that, Who's Habib? Tell 'em, you don't know Habib. . . . You know Joe?

2

Yeah, I know Joe. What's Joe's last name? It's Fakih." (Gov't Exs. 300-A, 300-T.) Because Rothenberg testified at trial that he had known Fakih as Habib, the jury could reasonably have concluded that Fakih was asking Rothenberg to lie to the FBI – precisely the type of wrongful conduct targeted by the witness tampering statute. See United States v. Farrell, 126 F.3d 484, 488 (3d Cir. 1997) ("attempting to persuade someone to provide false information to federal investigators constitute[s] 'corrupt persuasion' punishable under § 1512(b)").

The jury could also reasonably have concluded that Fakih was conscious of his wrongdoing, which supplies the requisite mens rea for "knowing corrupt persuasion." See Arthur Anderson LLP v. United States, 544 U.S. 696, 706, 125 S. Ct. 2129 (2005). Fakih's statement to Rothenberg that "I didn't see . . . I didn't speak to you in a long time. I was never here" (Gov't Exs. 300-A, 300-T) was most certainly susceptible to the interpretation that Fakih was directing Rothenberg to pretend that their conversation never happened. Fakih also said: "I don't want them to know that I came here and prepared you. That's why, don't say much. Use your common sense." (Id.) Given these statements, it was plainly reasonable for the jury to have found that Fakih knew that what he was doing was wrong.

Third, there was sufficient evidence for the jury to have concluded that Fakih knew that his actions would have the probable effect of interfering with a grand jury investigation. The evidence showed that Fakih called Rothenberg in August 2004 to advise him that the FBI would be coming to see him (Tr. 181); that Fakih's cousin met with Agent Browning at the United States Attorney's Office in the Southern District of New York on December 22, 2004 to discuss the credit card fraud investigation (Tr. 83); and that almost immediately after this meeting, Fakih called Rothenberg and insisted that they meet (Tr. 182). When Fakih met with Rothenberg the next day, Rothenberg told him that his employer had said that "somebody was up from the FBI"

3

to ask questions about "Joe from Reliable Beeper." (Gov't Exs. 300-A 300-T.) Fakih then said: "It's a good thing that I came to you before they come to you. . . . Most likely they are going to come tomorrow, yeah." (Id.) Fakih also told Rothenberg that "[t]here was a lot of credit card fraud that took place in my store" and then indicated that he knew about his cousin's meetings with the FBI in the Southern District. Fakih said: "My cousin Sam, he admit to everything he did in the store. Credit card fraud, whatever blah blah blah and that he said that I had no affiliation with this. I was always sick, I was never on hand." (Id.) Fakih further told Rothenberg about particular information that his cousin had given the FBI. (Id.) This evidence is more than sufficient for the jury to have inferred that Fakih knew from his cousin about the grand jury investigation and that Fakih had gone to meet Rothenberg with the express purpose of interfering with that investigation.

Finally, Fakih claims that there was insufficient evidence of venue in the Southern District of New York. The Court disposed of most of Fakih's venue objections in denying his pretrial motion to dismiss the indictment. (See Tr. dated Dec. 15, 2005 at 3; Order dated Dec. 20, 2005.) The only new arguments that Fakih asserts in regard to venue are that (1) there was no evidence of any pending grand jury investigation in the Southern District; and (2) the Court's jury charge on venue was erroneous. The first argument fails because Agent Browning testified that a grand jury sitting in the Southern District had issued subpoenas in connection with the investigation into credit card fraud and that this investigation was ongoing. (Tr. 55-56.) Moreover, as noted above, Fakih's cousin met with the FBI at the United States Attorney's Office in the Southern District on December 22, 2004 – and the evidence could fairly be read to have suggested that it was that meeting that prompted Fakih to meet with Rothenberg.

4

Fakih's second argument is that the Court's venue instruction was improper because it failed to require that Fakih had specific knowledge that the official proceeding he intended to affect was located in the Southern District of New York; rather, it required only that Fakih intended to affect an official proceeding and that that proceeding in fact took place or was to have taken place in the Southern District.[1] This argument is forfeited because Fakih did not object to the Court's venue instruction on these grounds before the jury retired to deliberate. See Tr. 401-403; Fed. R. Crim. P. 30(d); United States v. Crowley, 318 F.3d 401, 412 (2d Cir. 2003). In fact, Fakih raised this argument for the first time in his reply brief in support of his post-trial motion to set aside the verdict.

The argument also fails because case law does not support the suggestion that venue pursuant to 18 U.S.C. § 1512 requires a defendant to have had specific knowledge that the official proceeding he was intending to affect was taking place in the district at issue. Rather,

---

[1] The Court's full instruction on venue was as follows:

> In addition to the elements I have just described, you also must consider whether there is proper venue for this count in the Southern District of New York. Southern District of New York includes Manhattan, the Bronx, Westchester, Rockland, Putnam, Sullivan, Orange, and Dutchess Counties. Those are the counties of the Southern District of New York.
>
> The witness tampering statute provides that the crime of witness tampering may be prosecuted "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected."
>
> Thus, for venue to be proper in this case, the official proceeding that Mr. Fakih intended to be affected must have been located in the Southern District of New York. It is not necessary for the government to prove that Mr. Fakih knew about the proceeding, or that he knew it was to be in the Southern District of New York.
>
> I instruct you as a matter of law that a grand jury investigation constitutes an official proceeding within the meaning of the statute. Thus, for the government to properly establish venue pursuant to this section, it must prove that Mr. Fakih's actions were intended to affect the grand jury investigation that was taking place in the Southern District of New York.
>
> I should tell you that on this issue alone, that is the issue of venue, the government need not prove venue beyond a reasonable doubt. The burden on the government on the issue of venue is to prove venue simply by a preponderance of the evidence. Thus, the government will have satisfied the venue obligations if you conclude that it is more likely than not that Mr. Fakih's actions were intended to affect the grand jury investigation that was taking place in the Southern District of New York.
>
> If you find that the government has failed to prove this venue requirement, then you must acquit Mr. Fakih.

5

the cases cited by defendant – Arthur Anderson, United States v. Aguilar, 515 U.S. 593, 600, 115 S. Ct. 2357, 132 L. Ed. 2d 520 (1995), and United States v. Quattrone, 441 F.3d 153, 176-81 (2d Cir. 2006) – all concern the requisite knowledge and/or mens rea as to elements of the crime, not as to venue. Moreover, as noted above, the circumstantial evidence in this case strongly suggested that Fakih did in fact know or could reasonably have foreseen that the grand jury investigation was taking place in the Southern District because, as explained above, he had heard about the investigation from his cousin.

For the reasons set forth above, Fakih is not entitled to a judgment of acquittal pursuant to Rule 29. He also is not entitled to a new trial pursuant to Rule 33 because the interests of justice weigh against holding a new trial. After examining the entire record and taking into account all relevant facts and circumstances, the Court finds that the record supports the jury's verdict and that a new trial is not warranted. See Ferguson, 246 F.3d at 134.

For the foregoing reasons, Fakih's motion for a judgment of acquittal or for a new trial is denied.

Dated: New York, New York
July 18, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.

6